## CRAMER et al. v. BARFIELD.

(Court of Civil Appeals of Texas. Texarkana. April 3, 1913.)

1. TRESPASS TO TRY TITLE (§ 47*)—JUDGMENT —FINAL JUDGMENT.

The judgment, in trespass to try title, that plaintiffs take nothing, and that defendant re-cover of and from them the land in controversy, and that a certain road is the boundary between the parties, is a final one, though the parties agreed that the only question involved was as to the dividing line between their properties, thus eliminating, and depriving the court of power to determine, all but one issue.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 69–71; Dec. Dig. § 47.*]

2. JUDGMENT (§ 251*)—PLEADINGS TO SUPPORT.

Where the most that appears from the pleadings and to agreement of the parties filed in trespass to try title is that there was a dispute between the parties as to the location of a line separating lands owned by them, what the dispute is not appearing, they do not present an issue to try, and do not support a judgment determining the boundary line.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437; Dec. Dig. § 251.*]

3. BOUNDARIES (§ 37*)—EVIDENCE.

Testimony, that in 1859 and subsequently the road to H.'s mill turned northwest before reaching the west line of the B. survey, is without probative force in establishing the south boundary line of plaintiffs' land, described in their deed of 1894 as "the old road that formerly ran from H.'s old mill by the old plantation of R., as explained in a deed from L. to R., dated February 18, 1850."

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

Appeal from District Court, Morris County; P. A. Turner, Judge.

Action by Mrs. S. A. Cramer and another against J. T. Barfield. Judgment for defendant. Plaintiffs appeal. Reversed and remanded for new trial.

Henderson & Bolin, of Daingerfield, for appellants. Moore & Hart, of Daingerfield, and P. A. Turner, of Texarkana, for appellee.

WILLSON, C. J. Appellants (wife and husband) were the plaintiffs in the court below. Their suit was against appellee, and as commenced by them, was to try the title to 200 acres of a tract of 422 acres of land in Morris county known as the "Lilley Survey" and also known as the "Beard Survey." The petition contained only the allegations usually made by the plaintiff in a suit of trespass to try title. In the petition the land sued for was described as follows: "Beginning at the N. E. corner of the Lilley survey by virtue of the Beard headright certificate; thence south to the old road that formerly ran from Houston's old mill by the old plantation of E. G. Rogers as explained in a deed from J. D. Lilley and H. B. Lilley to J. T. Rogers, dated February 18, 1850; thence west with said road to the west boundary line of said Beard survey; thence north with said Beard's west line to the corner; thence east to the place of beginning, containing 200 acres of land." Appellee's answer was a plea of "not guilty."

On the trial appellants offered and the court admitted as evidence: (1) A deed from W. D. Hull to appellant Mrs. S. A. Cramer, dated May 1, 1894, conveying the land de-

scribed (and as described) in their petition. (2) A bond for title, dated June 20, 1853, made by J. D. Lilley to Livingstone Skinner. The land covered by this bond is not described in the record further than as "the land as contended for by defendant Barfield." From a recital in the statement of facts it appears that the bond was offered in evidence by appellants "to show that J. D. Lilley was the common source of title as between plaintiffs and defendant, and that said J. D. Lilley parted with the title to the tract of land described in plaintiffs' chain of title prior to the time he parted with the title to defendant's tract of land." No other evidence of title was offered by either party—an omission which is explained by a statement in the statement of facts immediately following the one quoted above, as follows: "It was here agreed by counsel for both appellant and appellee that plaintiffs owned the land north of the disputed line, and that defendant, appellee, owned the land south of same, and that the only question involved was as to the dividing line." The trial was by the court without a jury, and resulted in a judgment that appellants take nothing by their suit, and that, quoting, "the defendant recover of and from the plaintiffs the land in controversy, and that the plaintiffs pay all costs of this suit; and it is further ordered and decreed by the court that the old road known as the old Jefferson and Mt. Pleasant road is the north boundary line between parties to this suit."

[1] It is suggested that the judgment is not a final one; but we think it is. It determined the issues made by the pleadings. That those issues, except as to the identity of the land appellants claimed title to, may have been eliminated from the controversy by the agreement between the parties, and that the court in that way may have been deprived of a right to determine them, we think did not make his judgment any less a final one than it otherwise would have been.

[2] Ignoring other questions which may be presented by the record, and treating the controversy as the parties by their agreement engaged to treat it, as involving only the location of the boundary line between tracts of land they respectively owned, we think the judgment is erroneous in several respects, and that it should be reversed and the cause remanded for a new trial because it is without either pleadings or testimony to support it, in so far as it purports to determine said boundary line.

It appeared from appellants' petition that they claimed the south boundary of the land they asserted title to to be a line running west from the east boundary line of the Beard survey, with "the old road that formerly ran from Houston's old mill by the old plantation of E. G. Rogers as explained in a deed from J. D. Lilley and H. B. Lilley to T. J. Rogers, dated February 18, 1850," to the west boundary line of said Beard

survey. It did not appear either from his pleadings or from his agreement with appellants that appellee claimed that appellants' said boundary line was not as they claimed it to be; and in neither his pleadings nor in said agreement was the land he claimed, nor its north boundary line, in any way described. Therefore it must be said that the most that appeared from the pleadings and the agreement was that there was a dispute between the parties as to the location of a line separating lands they respectively owned. What that dispute was did not appear. For anything to the contrary appearing in the pleadings or agreement, it may have been as to whether the old road referred to was the south boundary line of appellants' land or not; or it may have been as to the location of that road on the ground. The court was not informed by either the pleadings or the agreement what the question to be determined was. An issue to try was not presented to him. "An issue," said the Supreme Court in Freeman v. McAninch, 87 Tex. 135, 27 S. W. 98, 47 Am. St. Rep. 79, "is the question in dispute between parties to an action, and, in the courts of this state, that is required to be presented by proper pleadings."

[3] It appears from the testimony that the dispute was as to the location on the ground of the old road referred to. Appellants' effort was to show that the old road ran west from the east boundary line of the Beard survey to its west boundary line; while appellee's effort was to show that, after running west from the east line of the Beard survey the greater part of the distance to the west line thereof, it turned and ran northwest to the west line of the Beard survey. Between the points where the parties respectively undertook to show the old road to have been was about 35 acres of land. If the old road was located on the ground as appellants claimed it to have been, the 35 acres belonged to them; otherwise it did not. The testimony showed that in 1859 the road from the east boundary line of the Beard survey to Houston's old mill ran west and then northwest to the west line of the Beard as claimed by appellee; but whether in 1850 it ran that way or not, or whether it ever ran on west to the Beard west line and Houston's old mill or not, was disputed. There was testimony that there were indications on the ground that at some time in the past a road did run on west to the Beard west line from the point where in 1859 and subsequently the old road turned and ran northwest, and there was testimony to the contrary. The language of the deed to Mrs. Cramer, describing the south boundary of the land conveyed as the old road that *formerly* ran *to Houston's mill, as explained in a deed dated February 18, 1850,* indicated that the road in question was not the road that then (in 1850) ran to Houston's old mill, but another and abandoned road. It would seem,

therefore, that testimony showing that in 1850 and subsequently thereto the road to Houston's old mill turned northwest before it reached the west line of the Beard survey was without probative force in establishing the south boundary line of the land appellants claimed. The road forming that boundary line was a road that in 1850 *formerly* ran to said mill, and not a road that in 1859 *ran* to it. The conveyance to Mrs. Cramer was of 200 acres. It appeared that, if appellants' south boundary line was located as they contended it should be, the tract they owned under the deed would contain 197 acres, or 3 acres less than the quantity called for in the deed; and that if said line was located as appellee claimed it should be appellants' tract would contain only about 162 acres, or about 38 acres less than the quantity called for in the deed. Under the circumstances shown by the record, we think the call for quantity and the call for the south line of appellants' land, to run west to Beard's west line should have been given controlling effect in determining the location of the line; and, had the pleadings been sufficient as a basis therefor, that the court should have rendered a judgment establishing the boundary line between the parties as extending west to the west boundary line of the Beard survey from the point where the road to Houston's old mill ran northwest to Beard's said west line.

The judgment is reversed, and the cause is remanded for a new trial.